UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RICHARD RAMIREZ,                                    **FIRST AMENDED COMPLAINT**

                                                                         **14 CV 10170 (KPF)**

                                                                         **ECF Case**

                      Plaintiff,
        vs.

The CITY OF NEW YORK,
POLICE OFFICERS DARIEL FIRPO, Shield 5089,
YADELIN SANCHEZPOLOS, Shield 11932,
ANDREW MENZIONE, Shield 12980,
RICHARD CONDE, Shield 24074, and
SERGEANT JONATHAN CORRADO, Shield 2800,    **JURY TRIAL DEMANDED**
in their individual and official capacities,

                      Defendants.
------------------------------------------------------------x

Plaintiff Richard Ramirez, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action arises from the First Amendment retaliation, false arrest, and malicious prosecution of Richard Ramirez ("Plaintiff") after he tried asking an NYPD officer for her badge number because she stuck her middle finger at him. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for First Amendment retaliation, excessive force, false arrest and imprisonment, illegal search, malicious prosecution, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Additionally, Plaintiff asserts analogous claims under New York Law against the individual defendants, and against the City of New York under the doctrine of *respondeat*

1

*superior*. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff Richard Ramirez is a 29-year-old Latino-American male, with no criminal record; he is a United States citizen, and a resident of Manhattan.

7. The individually named defendants Police Officer Dariel Firpo (Shield # 5089) ("PO Firpo"), Police Officer Yadelin Sanchezpolos (Shield # 11932) ("PO

Sanchezpolos"), Sergeant Jonathan Corrado (Shield # 2800) ("Sgt. Corrado"), Police Officer Andrew Menzione (Shield # 12980) ("PO Menzione"), and Police Officer Richard Conde (Shield # 24074) ("PO Conde") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the 20th Precinct.

9. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11. Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2014PI023050. At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12. The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on September 19, 2014.

13. This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

3

**STATEMENT OF FACTS**

14. On June 27, 2014, around 2 PM, Plaintiff, a highly-rated UberX driver, picked up a passenger ("the Passenger") at the southeast corner of Broadway and 65th Street in Manhattan. When Plaintiff picked up the Passenger, his car was in the right-most lane of northbound Broadway, and the first car behind the red light.

15. To drive the Passenger to her destination, Plaintiff had to turn left on 66th Street from Broadway. After the light turned green, Plaintiff accelerated and carefully changed lanes to the left-most lane in order to turn left. In doing so, Plaintiff drove safely and conscientiously, watching the cars around him, abiding by all traffic regulations, using his signal, maintaining a reasonable distance from all cars, doing absolutely nothing improper or unsafe.

16. Broadway, between 65th Street and 66th Street, is a four-lane street that runs at a diagonal angle, such that Plaintiff's car – first in the right-most lane – was farther north than the first car in the left-most lane, and it had a considerable head start for turning into the left lane.

17. As it happened, the first car in the left-most lane was an unmarked police car, a silver Chevrolet ("the Chevy") driven by PO Firpo, with PO Jane Doe riding in the front passenger seat.

18. After Plaintiff turned into the left-most lane, he took a slight left on 66th Street to go westward, and stopped behind the red light. The Chevy followed him and was right behind him at the light.

19. After a minute the light turned green. As Plaintiff proceeded through the intersection, he heard a siren and saw flashing lights coming from the Chevy. Plaintiff crossed Broadway and pulled over in a safe spot on West 66th Street.

20. PO Firpo approached Plaintiff's vehicle. Plaintiff rolled down his window, and when PO Firpo came into view, Plaintiff – who was very confused as to why he was stopped – asked, "How can I help you, Officer?"

21. PO Firpo demanded Plaintiff's license and registration. Plaintiff immediately complied, gathering the documents (which were valid) from the glove compartment, and handing them to PO Firpo.

22. Plaintiff again politely inquired, "What's the problem, Officer? What's going on?" PO Firpo told Plaintiff that he had observed Plaintiff make an unsafe lane change, into the Chevy's lane, causing PO Firpo to slam his brakes and "almost crash."

23. This statement by PO Firpo was not the truth. While Plaintiff drove into the same lane as the Chevy, he did so safely and cautiously, driving about 15 miles per hour, with two car lengths distance between Plaintiff's car and the Chevy. Moreover, once Plaintiff turned into the left-most lane, he kept his left turn signal on and gradually slowed down before he had to make the left turn.

24. It was, in fact, PO Firpo who had been driving unsafely and unlawfully. Specifically, PO Firpo was sending text messages and checking his phone while driving, not properly paying attention to the road and the cars around him.

25. Meanwhile, the Passenger was still in the back seat, listening to the interaction between Plaintiff and PO Firpo. When she heard PO Firpo accuse Plaintiff of making an

unsafe turn, she corrected PO Firpo, "He didn't do anything wrong. I was watching the way he was driving."

26.     Plaintiff also expressed that he had done "nothing wrong" and did not deserve an unlawful ticket. Plaintiff's tone was confident but calm. Plaintiff courteously asked PO Firpo to actually describe what made his lane-change "unsafe."

27.     PO Firpo could only articulate that Plaintiff changed lanes several times (which is true and not unlawful) and "cut off" his Chevy (which is not true).

28.     PO Firpo walked back to the Chevy, where he remained with PO Jane Doe for about twenty minutes. Afterward, PO Firpo walked up to Plaintiff and handed him a traffic ticket (Number AAX5129154) ("the Ticket") for "unsafe lane change," in violation of New York Vehicle and Traffic Law Section 1128(a) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."). PO Firpo wrote and signed his name on the Ticket as the complainant.

29.     Knowing the Ticket was unjust, deeply confused by it, Plaintiff asked why PO Firpo chose to issue the Ticket. Plaintiff wanted to understand PO Firpo's reasons, wanted to hear a reasonable explanation.

30.     Fed up with Plaintiff's questions, PO Sanchezpolos emerged from the Chevy and chastised Plaintiff, "Just take the ticket and go home!" PO Firpo then walked back to the Chevy and got inside with PO Sanchezpolos.

31.     Plaintiff walked to the trunk of his car to get a paper towel so that he could wipe his face, which was sweating profusely. As Plaintiff went to his trunk, he noticed

PO Firpo and PO Sanchezpolos laughing at him from inside the Chevy, which was still behind his car.

32. Plaintiff went back to the driver's seat of his car, ready to proceed to take the Passenger to her destination. Plaintiff waited for the Chevy to go past him on 66th Street before he began driving.

33. As the Chevy passed his car, Plaintiff saw PO Sanchezpolos sticking up her middle finger at him and laughing. The Passenger noticed this as well.

34. This adolescent and unprofessional gesture deeply offended Plaintiff, adding salt to the wound of the unfair Ticket. The Passenger told Plaintiff to get PO Sanchezpolos' badge number.

35. Wanting to file a complaint for the discourteous conduct, Plaintiff tried to ascertain PO Sanchezpolos' badge number. Plaintiff followed the Chevy down 66th Street, till it stopped at the red light at the intersection of 66th Street and Amsterdam Avenue, in the right lane next to the sidewalk.

36. Plaintiff pulled up behind the Chevy and stepped out of his car, approaching the passenger side of the Chevy, where PO Sanchezpolos was seated. When Plaintiff was a few feet away from the passenger side window – which was lowered – he told PO Sanchezpolos that he wanted her badge number because she stuck her middle finger at him. Plaintiff maintained a reasonable distance from the Chevy, and his demeanor continued to be measured and controlled.

37. Plaintiff had the right to ask for Sanchezpolos' badge number, and PO Sanchezpolos had the duty to answer Plaintiff's question. Plaintiff's question was clear, and the answer would have taken a second to mouth.

38.     Had PO Sanchezpolos simply given her badge number, that would have been the end of the matter.  Instead, PO Sanchezpolos exited the Chevy and accosted Plaintiff, abrasively screaming, "You want an OBGI?  You want problems?  You think you big and bad?"

39.     Plaintiff tried to remain calm, replying, "I'm being respectful.  What you did was disrespectful."  PO Sanchezpolos threatened, "Do you want to go to jail, or do you want to go home?"  Frightened, Plaintiff said, "I want to go home," and he stepped away to go back to his car.

40.     As Plaintiff approached his car, PO Firpo, who had exited the Chevy, commanded Plaintiff, "Now you're getting arrested.  Put your hands behind your back."  Plaintiff did as he was told.

41.     PO Firpo grabbed Plaintiff's arms, and PO Sanchezpolos yanked and jerked his arms in the course of placing handcuffs on Plaintiff, who was not resisting arrest.

42.     PO Sanchezpolos squeezed the handcuffs so tight that they blocked blood circulation to Plaintiff's right thumb.  PO Firpo noticed the excessive tightness and loosened the handcuffs.

43.     The Passenger was ordered out of the car.  She gave her information to PO Firpo and PO Sanchezpolos and eventually left the scene.

44.     PO Sanchezpolos called for backup, claiming that Plaintiff had a gun.  In fact, Plaintiff clearly posed no danger.  He did not resist arrest, did not raise his voice or threaten the officers; he did nothing to justify either the arrest or the call for backup.

45.     When Plaintiff was in handcuffs, PO Sanchezpolos repeatedly poked Plaintiff in the ribs, and put her hand in his pants pocket, apparently conducting a search as she

kept asking, "Where's the gun?" Plaintiff replied that he was at work and doesn't carry a gun.

46. All that was in Plaintiff's pocket was his cell phone. While PO Sanchezpolos' hand was in Plaintiff's pocket, PO Firpo slapped her hand away across Plaintiff's crotch, delivering a shot of pain to Plaintiff's groin.

47. Additional NYPD officers arrived at the scene, including Sgt. Corrado and other uniformed NYPD officers, along with an NYPD van and several cruisers. There was a frantic commotion as the responding officers ran toward PO Firpo and PO Sanchezpolos asking about the "gun." Plaintiff said clearly to the officers, "I do not have a gun."

48. PO Menzione noticed Plaintiff grimacing in pain and asked him what was wrong. Plaintiff explained that he couldn't feel his thumb because of the prior tightness of the handcuffs. PO Menzione looked at Plaintiff's handcuffs and said, "These handcuffs are too loose," then squeezed them back to their excessive tightness, causing great pain in Plaintiff's wrists.

49. Several police officers, including PO Menzione and PO Conde, began rummaging through Plaintiff's car, looking through its trunk and interior compartments, scattering Plaintiff's papers and belongings everywhere. When Sgt. Corrado noticed this unlawful search taking place, he yelled that the search was "embarrassing" and excoriated the officers to search the car at the precinct, and to "throw him [Plaintiff] in the car."

50. Plaintiff was put inside the Chevy, which transported him to the 20th Precinct ("the Precinct"), at 120 West 82nd Street. At the Precinct, Plaintiff was placed in a holding cell, while the PO Firpo wrote up a Criminal Court Summons ("the Summons").

51. Plaintiff waited for over an hour before he was handed the Summons and released from the Precinct. While waiting, he was searched and forced to remove his shoes.

52. During that time at the Precinct, PO Firpo went on a wild goose chase for evidence inside of Plaintiff's car, at one point bringing a stick into the station, taking pictures of it, and asking whether Plaintiff was using it as a weapon. Plaintiff indicated that it was merely a broken piece of a cleaning tool.

53. Also during this time at the Precinct, PO Firpo and PO Sanchezpolos continually teased and harassed Plaintiff by asking him if he had any mental illnesses for which he needed pills and therapy. "Are you crazy or stupid?" they asked him repeatedly.

54. The Ticket, which charged Plaintiff with "moving from lane unsafely," required Plaintiff to go to the Department of Motor Vehicles Traffic Violations Division, at 159 East 125th Street, on August 27, 2014, at 10:30 AM.

55. Plaintiff attended his traffic court hearing on that date. After hearing testimony from PO Firpo and Plaintiff, the presiding Judge dismissed the case. PO Firpo's claim that Plaintiff's lane change was "unsafe" was found to be false and implausible, as PO Firpo conceded that he only had to "brake a little," and that when Plaintiff turned left in front the Chevy, there was up to "two car lengths distance" between Plaintiff's car and the Chevy.

56.     The Summons (Number 4406888998) required Plaintiff to go to Manhattan Criminal Court, Part AR 6, on August 29, 2014.  The Summons charged Plaintiff with Disorderly Conduct in violation of New York Penal Law Section 240.20, and was filled out and signed by PO Firpo.

57.     Plaintiff attended Criminal Court on that date.  The presiding Judge dismissed the case because of the facial insufficiency of the Complaint/Information, which charged Plaintiff with Disorderly Conduct on grounds of making "unreasonable noise."  The factual allegations supporting the charge were affirmed under penalty of perjury by PO Firpo.

58.     PO Firpo's allegations are that he "observed Defendant [Plaintiff] with intent to cause public inconvenience annoyance or alarm/recklessly creating a risk thereof he engages in threatening behavior by yelling loud excessively and approaching vehicle in traffic [sic]."  PO Firpo added that Plaintiff stated in his presence, "I want to take a picture of you."

59.     As Plaintiff was being released from the Precinct, PO Firpo told Plaintiff, "Don't come to court if you don't want trouble," and "You're lucky you were an auxiliary police officer.  Otherwise I would've taken you downtown."

60.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

61. There is a systemic failure to identify, discipline, and supervise NYPD officers who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

62. The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

63. Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve. But when it comes to making false statements on court documents, NYPD officers almost never face discipline.

64. The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents. Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

65. The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

66. There is a gross deficiency in training NYPD officers on the First Amendment – the right of citizens to express themselves lawfully, specifically the right to demand an officer's badge number. Because of the poor training on freedom of expression, NYPD officers are unable to distinguish between protected speech and unprotected speech,

between merely inconvenient forms of speech and illegal forms of speech, between lawful inquiries and unlawful threats.

67. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

    a. Violation of his constitutional rights under the First and Fourth Amendments to the United States Constitution;

    b. Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

## FIRST CLAIM

### Deprivation of Federal Civil Rights Under Section 1983

68. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

69. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

70. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the First and Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

71. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

72. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### Illegal Search Under Section 1983

73.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

74.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from unlawful searches.

75.     Without probable cause, a warrant, or consent, the individual defendants searched through Plaintiff's car, where Plaintiff had an expectation privacy.

76.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### False Arrest Under Section 1983

77.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

78.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

79.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

80.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

**Malicious Prosecution Under Section 1983**

81.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

82.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

83.     Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt.

84.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

**FIFTH CLAIM**

**Excessive Force Under Section 1983**

85.      Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

86.     By the actions described, the individual defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from excessive and unreasonable force.

87.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

**SIXTH CLAIM**

**First Amendment Retaliation Under Section 1983**

88.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

89.     By the actions described, the individual defendants retaliated against Plaintiff because he lawfully exercised his First Amendment right to free speech – arresting him for asking PO Jane Doe her badge number.  In doing so, the individual defendants chilled Plaintiff's exercise of his right to free speech.

90.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SEVENTH CLAIM

### Failure to Intervene Under Section 1983

91.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

92.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

93.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

94.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## EIGTH CLAIM

### Municipal Liability Under Section 1983

95.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

96. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

97. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged .

## PENDENT STATE CLAIMS

### FIRST CLAIM

### False Imprisonment under N.Y. State Law

98. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

99. The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

100. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### SECOND CLAIM

### Malicious Prosecution Under N.Y. State Law

101. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

102.    As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

103.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

### Unreasonable Search and Seizure Under New York State Constitution Art. I § 12

104.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

105.    Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

106.    Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, took his property, confined him, and initiated false charges against him.

107.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

### Battery Under N.Y. State Law

108.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

109.    As detailed above, the individual defendants intentionally touched Plaintiff in an offensive and harmful manner, and they intentionally subjected him to offensive and harmful contact.

110.     As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)**

111.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

112.     Defendant City owed a duty of care to Plaintiff to prevent the false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

113.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

114.     Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

115.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

116.     As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

**Respondeat Superior Under N.Y. State Law**

117.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

118.     Defendant City is the employer of the individual defendants.

119.     Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this

case, the false imprisonment, malicious prosecution, and unreasonable search and seizure committed by the individual defendants against Plaintiff.

120. As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a. An order awarding compensatory damages for Plaintiff Richard Ramirez in an amount to be determined at trial;

    b. An order awarding punitive damages in an amount to be determined at trial;

    c. A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

    d. Such other and further relief as this Court may deem appropriate.


DATED:  May 2, 2015                                   _____s/_____
        New York, New York                            CYRUS JOUBIN, ESQ.
                                                      88 Pine Street, 14th Floor
                                                      New York, NY 10005
                                                      (703) 851-2467
                                                      joubinlaw@gmail.com
                                                      Attorney for Richard Ramirez